**LEGAL ENVIRONMENTAL ASSISTANCE FOUNDATION, INC.**

v.

**Leigh PEGUES, in his official capacity as Director of Environmental Management; James W. Warr, in his official capacity as Deputy Director of the Alabama Department of Environmental Management; and the River Gas Corporation.**

Civ. A. No. 89–H–263–N.

United States District Court, M.D. Alabama, N.D.

June 30, 1989.

On Motion to Amend Complaint July 27, 1989.

---

David A. Ludder, Legal Environmental Assistance Foundation, Tallahassee, Fla., for plaintiff.

Olivia H. Jenkins, Ala. Dept. of Environmental Management, Montgomery, Ala., for defendants Pegues and Warr.

Fournier J. Gale, III and Jarred O. Taylor, II, Maynard, Cooper, Frierson & Gale, P.C., Birmingham, Ala., for defendant River Gas Corp.

## ORDER

HOBBS, Chief Judge.

This cause comes before the Court *sua sponte* on the question of whether this Court has subject matter jurisdiction over the instant proceedings. The parties filed cross-motions for summary judgment on June 12, 1989 and cross-briefs in opposition to summary judgment on June 20, 1989. Upon consideration of the briefs submitted and for the reasons set out below, the Court ORDERS the plaintiff to show cause why the Court should not dismiss the com-

plaint for lack of jurisdiction. Plaintiff's reponse to the show-cause order shall be submitted on or before July 14, 1989, and defendants' reponse on or before July 25, 1989.

## HISTORY

Plaintiff filed this cause on March 17, 1989, seeking a declaration that "defendants Pegues and Warr are prohibited by the express provisions of the FWPCA from adopting the proposed ... effluent limitations and an injunction from issuing the proposed permits with such ... effluent limitations." Plaintiff seeks such declaratory and injunctive relief on the basis that the proposed effluent limitations are less stringent than those established under the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1251 *et seq.*, for such discharges. Plaintiff asserts jurisdiction based on 28 U.S.C. § 1331, claiming that the cause of action arises under FWPCA § 510, 33 U.S.C. § 1370. Upon request of the parties, the Court bifurcated the hearing on the issue of declaratory relief from the issue of injunctive relief. *See* Order of June 8, 1989.

## JURISDICTION AND DECLARATORY RELIEF

Although plaintiff does not specifically set out the basis for declaratory relief, the Court assumes that such relief is sought under 28 U.S.C. § 2201, as the FWPCA does not specifically provide for such actions. It is well settled that in an action for declaratory judgment under § 2201, the underlying coercive action must meet the jurisdictional requirements of this Court. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Therefore, in order to determine whether this Court has jurisdiction to issue the declaratory judgment which plaintiff seeks, it must determine whether it has jurisdiction over the underlying action.

## FEDERAL COURT JURISDICTION UNDER THE FWPCA

■ Plaintiff brings this action under FWPCA § 510, 33 U.S.C. § 1370 to enjoin defendants Pegues and Warr (ADEM) from issuing defendant The River Gas Corporation (Corporation) national pollutant discharge elimination system (NPDES) permits with effluent limitations which are less stringent than those encompassed in 40 C.F.R. § 435.32. 40 C.F.R. § 435.32 imposes a "no discharge" standard on the onshore subcategory of the oil and gas extraction industry.

Section 1370 provides

Except as expressly provided for in this chapter, nothing in this chapter shall (1) preclude or deny the right of any State or political subdivision thereof or interstate agency to adopt or enforce (A) any standard or limitation respecting discharges of pollutants, or (B) any requirement respecting other control or abatement of pollution; except that if an effluent limitation, or standard of performance is in effect under this chapter, such State or political subdivision thereof or interstate agency may not adopt or enforce any effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance which is less stringent than the effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance under this chapter; ....

Plaintiff has moved for partial summary judgment on the basis that the standard established in 40 C.F.R. § 435.32 applies to the activities of defendant Corporation, given the clear language of the regulation, and therefore defendant ADEM cannot issue NPDES permits which do not impose the "no discharge" limitation to defendant Corporation.

The defendant ADEM has submitted a motion for summary judgment and brief in opposition to plaintiff's motion for summary judgment on the basis that, although the language of the regulation would appear to impose a "no discharge" limitation on defendant Corporation, defendant ADEM is precluded from applying such standard to defendant Corporation because such regulation would be invalid under the terms of the FWPCA if it were so applied. Defen-

dant ADEM bases this argument on the factual record that the E.P.A. did not consider any of the factors specified in the statute which are relevant to the coal-bed methane gas production industry in promulgating 40 C.F.R. § 435.32, as such industry did not exist at the time the E.P.A. formulated the regulation. Under 33 U.S.C. § 1314(b)(1)(B), these industry-specific factors must be considered in promulgating discharge standards for point-source categories. Clearly they were not considered either in the creation of the "onshore oil and gas production industry" category, or in the "no discharge" standard formulated for that category. Defendant ADEM further argues that before it issued any NPDES permits to coal-bed methane gas producers, it sought confirmation of its analysis that the regulation did not apply from the E.P.A., and the E.P.A. concurred in the State's conclusion. ADEM then formulated alternative discharge standards based on those applied to run-off water from the coal-mining industry, given the similarities of the pollutants contained in the waste-water. It then issued permits for coal-bed methane gas producers which met the standards for the coal mining industry and which called for effluent discharges to meet national drinking-water standards.

Plaintiff responds that the issue of the validity of the regulation as applied is not before the Court, nor could it be since under 33 U.S.C. § 1369 only a federal circuit court of appeals can exercise original jurisdiction over the validity of a regulation. It further argues that the Court need not consider the discharge standards actually applied, since they do not meet the "no discharge" standards set forth in 40 C.F.R. § 435.32.

The Court finds that the suit for declaratory judgment and injunctive relief under § 1370 cannot be so easily separated from the issue of whether this Court has jurisdiction over the validity of the regulation as applied by defendant ADEM to defen-

dant Corporation. It seems patently unjust to allow a plaintiff to sue State officials in one court on the premise that such officials are in violation of the FWPCA for failing to apply a regulation, and then preclude the court in which the suit is pending from determining whether the regulation could be applied under the terms of the statute. As it seems unlikely that Congress intended such a result, the Court examines whether it can exercise jurisdiction over any part of this action.

Although plaintiff sues under § 1370, the Court notes that this section does not specifically authorize suits by private citizens. The Court further notes that the FWPCA has two sections which contain specific grants of jurisdiction to federal courts. The first, 33 U.S.C. § 1365, specifically confers on citizens the right to initiate suits in federal district court, and grants federal district courts jurisdiction to entertain suits

> (1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

This code section consistently has been construed to allow suit against dischargers who exceed the effluent limitations encompassed in a NPDES permit, or against dischargers who fail to obtain a NPDES permit.[1] *See,* for example, *Sierra Club v. Union Oil Co. of California,* 813 F.2d 1480, 1483 (9th Cir.1987) (actions to enforce permit terms may be brought by concerned citizens under 33 U.S.C. § 1365); *Friends of the Earth v. Consolidated Rail Corp.,* 768 F.2d 57, 59 (2d Cir.1985) (Act makes it unlawful for any person to discharge pollutants into navigable waters except in com-

---

**1.** This section also applies to suits brought against the Administrator of the Environmental Protection Agency. As the Administrator was not brought in as a party defendant in the instant proceedings, the Court need not consider those cases which set out the instances in which the Administrator may be sued under this section.

pliance with the limits and conditions of a discharge permit, citizens may sue under § 1365 to enforce such limits and conditions); *EPA v. California ex rel. State Water Resources Central Board,* 426 U.S. 200, 205, 96 S.Ct. 2022, 2025, 48 L.Ed.2d 578 (1976) (citizen suit under § 1365 may be brought for violation of 33 U.S.C. § 1311, which makes it unlawful to discharge a pollutant without obtaining a permit and complying with its terms). As to defendant ADEM, the Court finds no caselaw which would support the proposition that citizens can maintain an action against State officials under this section. Nor is such a construction consistent with the words of the statute. As to defendant Corporation, the instant suit alleges neither that it has violated the effluent limitations encompassed in its previous NPDES permits nor that it has discharged pollutants without first obtaining such a permit. Therefore, it appears from the face of plaintiff's complaint that the present action does not fall within that class of suits specifically allowed by § 1365.

■ The second jurisdictional grant encompassed in the FWPCA occurs at 33 U.S.C. § 1369(b). This section provides

(1) Review of the Administrator's action ... (E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, or 1316 of this title, and (F) in issuing or denying any permit under section 1342 of this title, may be had by any interested person in the Circuit Court of Appeals of the United States....

The Court finds no caselaw which would support the proposition that State officials or private entities can be sued under this section, which is logical given the language of this section. It is unclear whether the plaintiff could have joined the Administrator in this proceeding, or could have joined all defendants in a similar proceeding at the federal appellate court level, as the E.P.A. is not the entity issuing the permit. *See, District of Columbia v. Schramm,* 631 F.2d 854, 862 (D.C.Cir.1980). Regardless of plaintiff's ability to join the Administrator as party defendant in any federal court, plaintiff clearly has not done so in

this case, and therefore the second basis of jurisdiction is inapplicable to the instant proceeding on the face of plaintiff's complaint.

The Court notes that plaintiffs complaint alleges neither § 1365 nor § 1369 as a jurisdictional basis, but rather bases jurisdiction on 28 U.S.C. § 1331. The Court acknowledges that a cause of action may exist where the federal statute does not explicitly provide one. If such a cause of action exists, then this court would have federal question jurisdiction under 28 U.S.C. § 1331. However,

[i]n determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted).

■ The Court initially notes that the FWPCA is not merely silent in regard to creating a private right of action, but specifically provides for such action in only a narrow class of cases. Therefore, the statutory structure itself would seem to imply that Congress did not intend private citizens to seek enforcement of the provisions of § 1370 by way of a citizens' suit to block a State's issuance of an NPDES permit. This conclusion is supported in the legislative history surrounding the creation of state NPDES permit programs. In authorizing such programs, Congress made it clear that state permits would be issued "under State law [and] would be State, not

Federal, actions...." 118 Cong.Rec. 33761 (1972), *reprinted in* 1 Legislative History at 262 (remarks of Rep. Wright). Therefore, the legislative history indicates that this type of action should be relegated to state law. Furthermore, the statutory structure of the FWPCA provides for different avenues of redress for those who are affected by the issuance of NPDES permits. In order to be eligible to issue NPDES permits a state must enact adequate notice and enforcement mechanisms for administering its program.[2] Furthermore, if such mechanisms were not enforced or if defendant ADEM were to issue permits in violation of the mandates of the FWPCA, plaintiff would be able to request review of the State program by the Administrator of the E.P.A. under § 1342(c)(3). If the Administrator were to find the State in violation of the statute, then he would issue guidelines to bring the State into compliance, or would determine whether withdrawal of approval of the State program would be appropriate. If the Administrator were to refuse to conduct such a review, then plaintiff could sue the Administrator under § 1365 to compel him to perform a non-discretionary function.

Although the Court cannot construct a scenario in which the plaintiff would be able to sue defendant ADEM in federal court, such a result is not unconscionable or unreasonable, given that plaintiff has an adequate remedy in state court. Furthermore, it is logical that plaintiff's ability to bring a State agent into federal court should be restricted, as it is the duty of the Administrator to supervise the State program. Such limitation seems especially pertinent in the present case where the State agents have sought the guidance of the E.P.A. in the administration of the State program. Ultimately, plaintiff has the ability to compel the Administrator to fulfill his supervisorial duty by bringing suit in federal court. Therefore, this Court finds no reason to imply a federal right of action to enforce § 1370.

## CONCLUSION

Having found that the jurisdictional grants in §§ 1365 and 1369 do not apply in the present case and further having found that the Court cannot exercise jurisdiction under 28 U.S.C. § 1331 since it is of the opinion that a federal right of action to enforce 33 U.S.C. § 1370 is not implicit in the FWPCA, the Court finds no basis upon which it can exercise jurisdiction over this cause. However, as this basis for dismissal has not been addressed by the parties to the suit, the Court issues its show cause order so that plaintiff may point out any error in the Court's reasoning and establish a proper jurisdictional basis for the present action.

## ORDER

### On Motion To Amend Complaint

Plaintiff's motion for leave to amend its complaint is GRANTED and the amended complaint allowed. However, since the complaint, as amended, fails to state a valid basis of jurisdiction of this Court, the Court DISMISSES the action, without prejudice to its being brought in a court of competent jurisdiction.

### EFFECT OF SUPREMACY CLAUSE

█ Plaintiff amends its complaint to allege that this Court has jurisdiction under 28 U.S.C. § 1331 by reason of the Supremacy Clause, U.S. Const. Art. VI, cl. 2. The Supremacy Clause states:

> The Constitution and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land....

It has been noted that

> The Supremacy Clause does not secure rights to individuals; it states a fundamental structural principle of federalism.

---

**2.** The Court notes that the plaintiff could have challenged the effluent limitations encompassed in the challenged NPDES permits or the water quality standards established by the Alabama Department of Environmental Management (ADEM) for the Black Warrior River and its tributaries under Ala.Code § 22–22–9(*o*) (1988 supp.). Such suits have been recognized in other jurisdictions. *See, e.g., Wisconsin Electric Power Co. v. State Natural Resources Bd.*, 280 N.W.2d 218, 90 Wis.2d 656 (1979).

While that clause is the reason why a state law that conflicts with a federal statute is invalid; it is the federal statute that confers whatever rights the individual is seeking to vindicate.

*Andrews v. Maher*, 525 F.2d 113, 119 (2d Cir.1975). *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 613, 99 S.Ct. 1905, 1913, 60 L.Ed.2d 508 (1979) (the Supremacy Clause is not a source of any federal rights but merely protects federal rights by giving them priority when they conflict with state law).

The question presented in this Court's show cause order is whether plaintiff's complaint states a federal cause of action, and therefore whether plaintiff has a right to relief under federal law. In its memorandum brief, plaintiff does not address the Court's concern that plaintiff has no federal right of action to seek an injunction to bar defendants Warr and Pegues from issuing NPDES permits to defendant Corporation with effluent limitations which do not meet 40 C.F.R. § 435.32's "no discharge" standard. Since this Court is of the opinion that Congress intended that the *issuance* of NPDES permits under State programs be governed under State laws, the Court finds no federal law which governs the instant litigation. As plaintiff has no remedy or right of action which the Federal Water Pollution Control Act, as amended, 33 U.S.C. §§ 1251 *et seq.* created or which plaintiff may enforce via the Supremacy Clause, plaintiff's complaint is due to be dismissed for want of subject matter jurisdiction.

DONE and ORDERED.